JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ayman Soliman

**DEFENDANTS**
Joseph Edlow, et al

**(b)** County of Residence of First Listed Plaintiff  Butler
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert A. Ratliff
200 Public Sq. #1850
Cleveland, OH 44114

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☒ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☒ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of Agency Decision |
| | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 USC §§.551 - 559
Brief description of cause:
APA Review of USCIS Decision

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE Barret
DOCKET NUMBER 1:25 cv 480

DATE 7-24-25

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

JS 44 Reverse (Rev. 03/24)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

AYMAN SOLIMAN,

      Petitioner,

      v.

JOSEPH B. EDLOW, in his official capacity
as Director, U.S. Citizenship and Immigration
Services, U.S. Citizenship and Immigration
Services;
DARICE I. ALVERTOS, in her official capacity
as Director, Chicago Asylum Office, U.S.
Citizenship and Immigration Services;
KRISTI NOEM, in her official capacity as
Secretary, U.S. Department of Homeland Security,
U.S. Department of Homeland Security;

      Defendants.

**HEARING REQUESTED**

Case No.:

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE**
**ADMINISTRATIVE PROCEDURE ACT**

---

## INTRODUCTION

1.      The United States provides humanitarian protection to asylees fleeing persecution, allowing them to rebuild their lives and integrate into society. Once granted, asylum status is presumptively final and may only be terminated under narrow statutory grounds supported by a preponderance of evidence. This case challenges USCIS's unlawful termination of Plaintiff's asylum status, which was granted in 2018 after full review of the same facts now cited as grounds for termination.

2.     Plaintiff Ayman Soliman fled persecution in Egypt and was granted asylum on June

7, 2018, based on his well-founded fear of persecution. His application disclosed his prior

involvement with Al-Gam'iyya al-Shar'iyya (GS), a charitable organization. No terrorism-related

bar was applied at that time. Seven years later, without new evidence or law, USCIS terminated

his status on June 3, 2025, alleging material support to a Tier III terrorist organization (the Muslim

Brotherhood, MB) via GS. This decision relies on factual errors, misinterpreted academic sources,

impermissible burden shifting, and violates res judicata, rendering it arbitrary, capricious, and

contrary to law.

3.     The termination has caused irreparable harm, including loss of employment

authorization, initiation of removal proceedings, and risk of deportation to Egypt, where Plaintiff

faces persecution. Plaintiff seeks declaratory and injunctive relief to vacate the termination and

reinstate his asylum status.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 (federal question jurisdiction), as this case arises under the Administrative Procedure Act

(APA), 5 U.S.C. § 701 et seq., and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et

seq. This Court has additional remedial authority under the Declaratory Judgment Act, 28 U.S.C.

§§ 2201-2202, and the mandamus statute, 28 U.S.C. § 1361.

5.     The APA provides a cause of action for persons aggrieved by final agency actions

that are arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial

evidence. 5 U.S.C. § 706. Defendants' termination of Plaintiff's asylum status constitutes a final

agency action subject to judicial review.

6.     Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391(e)(1)

because Plaintiff resides in Cincinnati, Ohio, within this District, and a substantial part of the

2

events giving rise to this claim occurred here, including the impact of the termination on Plaintiff's life and employment. No real property is involved in this action.

## PARTIES

7. **Plaintiff Ayman Soliman** is an asylee who was granted asylum by U.S. Citizenship and Immigration Services (USCIS) on June 7, 2018, after entering the United States lawfully on March 6, 2014. He resides in Cincinnati, Ohio, and has been pursuing adjustment of status to lawful permanent resident for over six years. He challenges the unlawful termination of his asylum status by Defendants, which has resulted in his detention in the Butler County jail, the loss of his employment authorization and placement in removal proceedings.

8. **Defendant Joseph B. Edlow** is sued in his official capacity as Director of USCIS. He oversees USCIS operations, including the adjudication of asylum applications and terminations. USCIS is an agency within the U.S. Department of Homeland Security (DHS) responsible for the termination decision at issue.

9. **Defendant Darice I. Alvertos** is sued in her official capacity as Director of the Chicago Asylum Office, USCIS. She issued the Notice of Termination of Asylum Status dated June 3, 2025, and oversees the office that conducted the termination proceedings.

10. **Defendant Kristi Noem** is sued in her official capacity as Secretary of DHS. She oversees DHS components, including USCIS, and is responsible for the policies and actions challenged herein.

## FACTUAL BACKGROUND

11. Plaintiff lawfully entered the United States on March 6, 2014, at Detroit International Airport with a B1/B2 visa. He adjusted to R-1 status briefly before filing a timely asylum application on February 2, 2015.

3

12.    USCIS granted asylum on June 7, 2018, after reviewing Plaintiff's GS involvement (board member and donor in a local branch focused on charitable aid). No terrorism bar was applied.

13.    Plaintiff applied for adjustment of status, which has been pending for over six years without resolution.

14.    On December 4, 2024, USCIS issued a Notice of Intent to Terminate Asylum Status, alleging Plaintiff provided material support to GS, which purportedly supported MB, a Tier III terrorist organization since December 5, 2012.

15.    After a brief interview, USCIS terminated asylum on June 3, 2025, citing two pre-2018 academic reports (Brooke, 2015; Vannetzel, 2017) for GS-MB links (voter transport, medical services, 2011-2013)(Exhibit A). USCIS deemed the entirety of MB a terrorist organization from December 5, 2012, without specific findings on terrorist activities or authorization.

16.    The decision contains errors: Egypt designated MB terrorist on December 25, 2013 (post-coup), not 2012; MB is not a U.S.-designated terrorist organization; GS is a decentralized charity, not terrorist-linked; authors of cited reports refute USCIS's interpretation (Brooke letter, July 14, 2025, Exhibit B; Vannetzel letter, July 20, 2025, Exhibit C).

17.    USCIS assumed Plaintiff's knowledge without evidence, shifting the burden prematurely. No new post-2018 evidence was presented, violating res judicata.

18.    USCIS issued a Notice to Appear (NTA) on June 5, 2025, placing Plaintiff in removal proceedings before the Cleveland Immigration Court.(Exhibit D)

19.    A Consolidated Master Calendar and Custody Redetermination ("Bond") Hearing was held on July 22, 2025, at 1 pm before Immigration Judge Jennifer Riedthaler-Williams. DHS

4

sought to avoid Immigration Court jurisdiction for custody redetermination. The Immigration Judge held the bond record open to allow the parties to provide additional briefing and evidence.

20.     The government submitted a Form I-261 revising the allegations and charges of removability/deportability, which included removing the allegation of providing material support to a terrorist organization, the basis for terminating Plaintiff's asylum. (Exhibit E)

21.     Another Master hearing is scheduled for July 29, 2025, at 8 am to address the change in charges.

22.     Plaintiff's removal proceedings remain pending. Plaintiff's asylum remains terminated, and Plaintiff remains in detention.

23.     USCIS's termination of Plaintiff's asylum violates INA § 208(c)(2), 8 C.F.R. § 208.24, and due process, as it relitigates settled eligibility without cause.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act – Arbitrary and Capricious
### 5 U.S.C. § 706(2)(A)

24.     Plaintiff incorporates the above allegations.

25.     Defendants' asylum termination is arbitrary and capricious, relying on factual errors, misinterpreted evidence, and unsubstantiated assumptions of knowledge and GS-MB ties. It lacks preponderance of evidence for Tier III status or material support under INA § 212(a)(3)(B).

26.     The decision ignores rebuttal evidence (e.g., Egyptian court ruling no GS-MB ties) and academic refutations, rendering it unsupported by substantial evidence.

### SECOND CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act – Contrary to Law, 5 U.S.C. § 706(2)(C)

27.     Plaintiff incorporates the above allegations.

28.     The termination contravenes INA § 208(c)(2)(B) and 8 C.F.R. § 208.24, requiring preponderance of evidence before termination. It misapplies the terrorism bar without specific findings on terrorist activity (*Uddin v. AG*, 870 F.3d 282 (3d Cir. 2017); *Khan v. Holder*, 766 F.3d 689 (7th Cir. 2014)).

29.     It violates res judicata and collateral estoppel by relitigating 2018 eligibility absent new evidence (*Arangure v. Whitaker*, 911 F.3d 333 (6th Cir. 2018)).

### THIRD CLAIM FOR RELIEF
### Violation of Due Process Under the Fifth Amendment

30.     Plaintiff incorporates the above allegations.

31.     The termination deprives Plaintiff of protected liberty interests (asylum status, work authorization) without due process, through impermissible burden shifting (*Matter of M-H-Z-*, 26 I&N Dec. 757 (BIA 2016)), reliance on false information, and manipulation as a "third attempt" to deny asylum after delays.

32.     This violates fundamental fairness (*Colmenar v. INS*, 210 F.3d 967 (9th Cir. 2000)).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

33.     A. Declare that Defendants' termination of Plaintiff's asylum status is arbitrary, capricious, an abuse of discretion, contrary to law, and in violation of the APA, INA, and Fifth Amendment;

34.     B. Vacate and set aside the June 3, 2025, Notice of Termination of Asylum Status and the associated Notice to Appear and Additional Charges of Removability/Deportability;

35.     C. Order Defendants to reinstate Plaintiff's asylum status, including restoration of employment authorization and any related benefits;

36.     D. Enjoin Defendants from taking any further action to terminate Plaintiff's asylum status based on the same grounds absent new evidence or law;

37.     E. Award Plaintiff reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable provisions;

38.     F. Grant such other and further relief as the Court deems just and proper.

Date: July 23, 2025

Signed: _____

    Robert A. Ratliff, Esq.
    Brennan, Manna and Diamond, LLC
    200 Public Square, Suite 1850
    Cleveland, Ohio 44114
    (216) 658-2323
    raratliff@bmdllc.com
    Attorney for Plaintiff Ayman Soliman

7

**VERIFICATION**

I, Ayman Soliman, declare as follows:

1. I am the Plaintiff in the above-captioned action and an asylum seeker, presently residing in the United States. I am currently detained, at the Butler County Jail, Butler County, Ohio, under the custody of the United States.

2. I am over the age of 18 and competent to make this verification.

3. I have personal knowledge of the facts, activities, and circumstances set forth in the foregoing Complaint for and if called upon to testify, I would competently testify as to the matters stated therein.

4. I have reviewed the Complaint and know its contents. The allegations in the Complaint are true and correct to the best of my knowledge, information, and belief, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

5. I verify under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing Complaint are true and correct. 28 U.S.C. § 1746.

Executed on _July 23rd, 2025_, at _Butler County Jail_

_Ayman Soliman_
Ayman Soliman

State of Ohio
County of_____

The foregoing instrument was acknowledged before me on this _____ (date) by
_____ (name of person acknowledging).


_____
Signature of Notary Public – State of Ohio

My commission expires: _____ (date)

**Witness Certification:**

I, Julia Healy, am an attorney licensed to practice in the State of Ohio and admitted to practice in the Southern District of Ohio. I personally witnessed Ayman Soliman sign the foregoing document on July 23, 2025, and to the best of my knowledge, he did so knowingly and voluntarily.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 23, 2025 at Cincinnati, Ohio.

Julia Healy, Esq.

Bar No. 0104794

julia@nazlylaw.com / 513-740-1092

## VERIFICATION

I, Ayman Soliman, declare as follows:

1. I am the Plaintiff in the above-captioned action and an asylum seeker, presently residing in the United States. I am currently detained, at the Butler County Jail, Butler County, Ohio, under the custody of the United States.

2. I am over the age of 18 and competent to make this verification.

3. I have personal knowledge of the facts, activities, and circumstances set forth in the foregoing Complaint for and if called upon to testify, I would competently testify as to the matters stated therein.

4. I have reviewed the Complaint and know its contents. The allegations in the Complaint are true and correct to the best of my knowledge, information, and belief, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

5. I verify under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing Complaint are true and correct. 28 U.S.C. § 1746.

Executed on _July 23rd 2025_, at _Butler County Jail_.

_Ayman Soliman_
Ayman Soliman

State of Ohio
County of _Hamilton_

The foregoing instrument was acknowledged before me on this _07/24/25_ (date) by
_Julia Healy_ _____ (name of person acknowledging).

_[signature]_
Signature of Notary Public – State of Ohio
My commission expires: _N/A_ (date)

**ALISHER KASSYM**
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Date. Section 147.03 O.R.C.

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, a true and correct copy of the foregoing Complaint

was served via [method, e.g., CM/ECF or certified mail] on all parties or their counsel of record.

Signed: _____

        Robert A. Ratliff, Esq.
        Brennan, Manna and Diamond, LLC
        200 Public Square, Suite 1850
        Cleveland, Ohio 44114
        (216) 658-2323

# EXHIBIT A

# NOTICE OF TERMINATION

Uploaded on: 07/22/2025 at 12:20:02 PM (Eastern Daylight Time)  Base City: CLE

U.S. Department of Homeland Security
Chicago Asylum Office
181 W. Madison St., Suite 3000
Chicago, Illinois 60602



**U.S. Citizenship
and Immigration
Services**

Date: May JUN 20 2025 2025

Alien #: 207 336 160

Ayman SOLIMAN
3515 W Fork Rd, Apt 30
Cincinnati, OH 45211

<u>**Notice of Termination of Asylum Status**</u>

Dear Mr. SOLIMAN:

The purpose of this letter is to notify you that U.S. Citizenship and Immigration Services (USCIS) has terminated your asylum status, effective **May 21, 2025.**

USCIS obtained evidence that indicated you provided material support to a Tier III terrorist organization, such that you are not eligible for asylum. Pursuant to Section 208(c)(2)(B) of the Immigration and Nationality Act (INA), asylum status may be terminated if, following an interview, it is determined that an alien is subject to a terrorism-related ground of inadmissibility as defined in INA Section 212(a)(3)(B). Specifically, your asylum status is terminated due to your having provided material support to an undesignated terrorist organization and for membership in a terrorist organization, as defined in INA sections 212(a)(3)(B)(iv)(VI)(dd) and 212(a)(3)(B)(i)(VI).

A group meets the definition of a Tier III terrorist organization when it engages in terrorist activity or has a subgroup that engages in terrorist activity as defined in INA Section 212(a)(3)(B). Al-Jameya al Shareya, a group of which you were once a board member and active member, became openly associated with the Muslim Brotherhood—a terrorist group from December 5, 2012 to the present   between 2011 and 2013, during part of the time you were politically engaged in Egypt; specifically, "[i]n one instance, al-Gam'iyya al Shar'iyya allegedly used its vehicles to transport 'fully veiled [female] voters' (*al-nakhibat al-munaqibat*) to polling stations, allegedly to support the Brotherhood. In other cases, the Brotherhood's political party (the Freedom and Justice Party, FJP) cooperated with local branches of both Ansar al-Sunna and al-Gam'iyya al-Shar'iyya to provide medical services. … It appears that, at least for al-Gam'iyya al-Shar'iyya and Ansar al-Sunna, the ostensibly 'nonpolitical' nature of charitable events (even if they were organized with a political party) eased cooperation with the sharply politicized Muslim Brotherhood." Steven Brooke, Combatting Terrorism Center at West Point, *Islamic Groups' Social Service Provision and Attitudinal Change in Egypt*, June 2015, available at https://ctc.westpoint.edu/wp-content/uploads/2015/06/Brooke_CTC_IslamicGroupSocialService_June20153.pdf (accessed 25 April 2025).

EOIR - 3 of 146

Other reports demonstrate the interlink of the Muslim Brotherhood and Al-Jameya al Shareya: "The MBs [Muslim Brotherhood] were allowed to deeply integrate into the regional and local offices of the association [al-Jameya al Shareya], until 1990. In that year, their victory in the elections to the central board led to a change in the attitude of the regime towards this situation, and the board was suddenly dissolved. However, many MB activists remained active in the numerous local branches, and were often among the founders...One of the most famous programs run by the GS, which accounts for much of its popularity, was established under the leadership of the Muslim Brothers[.]" Marie Vannetzel, "The Muslim Brotherhood's 'Virtuous society' and State Developmentalism in Egypt: the Politics of 'Goodness' ", *International Development Policy | Revue internationale de politique de développement* [Online], 8 | 2017, Online since 14 September 2017, connection on 25 April 2025. URL: http://journals.openedition.org/poldev/2327; DOI: https://doi.org/10.4000/poldev.2327

The country reports thus demonstrate clear links between the Muslim Brotherhood and Al-Jameya al Shareya, and the latter group's support of the Muslim Brotherhood by providing transport of prospective voters and cooperating with the Muslim Brotherhood to provide medical services. These institutional acts constitute material support for the Muslim Brotherhood, a Tier III terrorist organization, and in turn render Al-Jameya al Shareya a Tier III terrorist organization. The Muslim Brotherhood in Egypt is considered a Tier III terrorist organization from December 5, 2012 to the present.

At the termination interview, you addressed your support to Al-Jameya al Shareya and disputed its ties to the Muslim Brotherhood. You testified that you donated money to Al-Jameya al Shareya beginning in around 1999 or 2000, giving a monthly donation from around 2000 until the time you left Egypt. As a board member, you participated in working on plans for sponsorship of poor students, families, and orphans; medical convoys; and running the mosques and educational programs. You testified that Al-Jameya al Shareya has more than 1100 branches all over the country, and that you served in a small location. You testified that Al-Jameya al Shareya has worked with every political party and every organization that helps people, as well as the Egyptian government. You further testified and provided articles demonstrating that the High Administrative Court of the State Council found that Al-Jameya al Shareya had no ties with the Muslim Brotherhood.

A preponderance of the evidence indicates you provided material support to a Tier III terrorist organization, and you did not demonstrate by clear and convincing evidence that you did not know, or reasonably should not have known, that the organization was a terrorist organization. As a member of Al-Jameya al Shareya for over a decade, including during the time the group was affiliated with the Muslim Brotherhood, you either knew, or reasonably should have known, of the link between these groups, particularly considering your level of participation as a board member of your local chapter. Furthermore, the ruling of the Administrative Court that Al-Jameya al Shareya has no ties to the Muslim Brotherhood was, as noted by the country reports, a result of the group's pursual of "accommodation with Egypt's military government[,]" a "strategy [that] has seemingly paid off[.]" Steven Brooke, Combatting Terrorism Center at West Point, *Islamic Groups' Social Service Provision and Attitudinal Change in Egypt* (cited above). As such, the High Administrative Court ruling is not given much weight in refuting the link between the groups, since it came as a result of Al-Jameya al Shareya currying favor with the Egyptian government to achieve a favorable ruling.

Enclosed please find a Notice to Appear (Form I-862), which places you in removal proceedings. Pursuant to 8 C.F.R. 208.24(c), you are no longer eligible for employment authorization incident to asylum status. Accordingly, the employment authorization last issued to you on **June 7, 2018** based on your grant of asylum is hereby terminated as of the date of this letter.

You should direct any questions about your asylum request or removal proceedings to the immigration court having jurisdiction in your case. In addition, you must notify the immigration court of any change of your address.

EOIR – 4 of 146

Uploaded on: 07/22/2025 at 12:20:02 PM (Eastern Daylight Time)  Base City: CLE

Sincerely,


Darice I. Alvertos
Director, Chicago Asylum Office

Attach: Notice to Appear

CC:    Kathryn Brady
        100 N Central Expy, Ste 1010
        Richardson, TX 75080

EOIR – 5 of 146

# EXHIBIT B

# STEVEN BROOKE LETTER



**WISCONSIN**
UNIVERSITY OF WISCONSIN–MADISON

July 19, 2025

To Whom It May Concern,

On July 14 Mr. Robert Ratliff contacted me and provided me with two U.S. Department of Homeland Security documents related to his client, Mr. Ayman Soliman. Both documents (a "Notice of Intent to Terminate Asylum Status" and "Intent to Terminate Asylum Status") reference my public academic research to support their argument that Mr. Soliman's asylum status be terminated based on his role in an organization (al-Jameya al-Shareya) that allegedly provided "material support to an undesignated terrorist organization." The "undesignated terrorist organization" is the Egyptian Muslim Brotherhood.

I would like to make the court aware of important mistakes of fact and interpretation in both Department of Homeland Security documents. In brief, the documents incorrectly date the Muslim Brotherhood's designation as a terrorist group by the Egyptian government by one year. The documents also treat the Egyptian government's designation uncritically, and do not contextualize what "affiliation" between the Muslim Brotherhood and al-Jameya al-Shareya represents.

To first give a brief summary of relevant developments in Egyptian politics during this time: The Muslim Brotherhood, via its legally-registered political party (the Freedom and Justice Party, FJP), joined groups from across the political spectrum in openly contesting elections following the collapse of Egypt's longtime authoritarian government in early 2011, as part of the "Arab Spring" uprisings. The FJP were very successful in these elections, most notably when their candidate, Mohammed Morsi, won the two-round presidential elections in May/June 2012. International election observers judged these contests as free and fair, and their results were accepted as valid by the international community, including the United States.

On July 3, 2013 the Egyptian military overthrew the elected government of Egypt, imprisoned the aforementioned Mohammed Morsi, and began a widespread and violent crackdown on the opposition. Significant numbers of individuals, both affiliated to the Muslim Brotherhood and not, were killed, imprisoned without trial, or forced to flee the country. As part of this crackdown, the Muslim Brotherhood was declared a terrorist organization in late December of 2013. Under this same military government, Egypt today is one of the most repressive and authoritarian countries in the region.

This summary highlights issues with the termination documents. First, both documents argue that the Egyptian Muslim Brotherhood was declared a terrorist organization on "December 5, 2012." This is not correct. As noted above, the Egyptian government formally declared the Brotherhood a terrorist organization on December 25, 2013, following the military coup approximately six months earlier.[1] In December of 2012 the Muslim Brotherhood headed the freely elected, legally and internationally recognized government of Egypt, and its members were frequently and publicly meeting with American diplomats, legislators, business leaders, and academics.

Second, I would caution against accepting the Egyptian government's designation of the Muslim Brotherhood as a terrorist group at face value. In my opinion, that December 2013 designation was driven as much by the

---

[1] See, for example, Kareem Fahim, "Egypt, Dealing a Blow to the Muslim Brotherhood, Deems it a Terrorist Group," *The New York Times*, December 26, 2013. Available at: https://www.nytimes.com/2013/12/26/world/middleeast/egypt-calls-muslim-brotherhood-a-terrorist-group.html.

military regime's desire to consolidate power and target the political opposition as any objective, evidence-based standard of terrorism (i.e. the deliberate targeting of civilians to advance a political aim).[2] Based on the research I have conducted, I do not think the evidence supports labeling the Egyptian Muslim Brotherhood a terrorist organization during the period in question.

Third, the documents note episodes of cooperation between al-Jameya al-Shareya and the Muslim Brotherhood (i.e. transporting citizens to the polls, use of facilities, overlap of board members) as evidence these two organizations are closely associated. It is important to bear in mind that al-Jameya al-Shareya is a very large, decentralized, and diverse social movement (much moreso than the Brotherhood, for example). In practice, this means that al-Jameya al-Shareya's activities in one neighborhood may be quite different than next door: one branch may cooperate with local Muslim Brotherhood members on some issue of mutual concern, while another branch refuses to do so, or may even decide to cooperate with the Brotherhood's ideological opponents. In my book I depict al-Jameya al-Shareya as basically opportunistic on this count- they tend to work with any organization across the political spectrum, including the government, when that cooperation might benefit them.[3] Individual instances of cooperation or overlap do not indicate that al-Jameya al-Shareya is organizationally allied to the Muslim Brotherhood. At the end of the day, it is its own actor, with unique ideology, activities, and goals.

I am happy to elaborate on any of the points in this letter if it would be helpful.

Very Respectfully,

Steven Brooke, Ph.D.
Associate Professor of Political Science
Faculty Director of Middle East Studies
University of Wisconsin-Madison

---

[2] See, for example, "Egypt: Terrorist Tag Politically Driven," Human Rights Watch, December 28, 2013. Available at: https://www.hrw.org/news/2013/12/28/egypt-terrorist-tag-politically-driven
[3] See, for example, Steven Brooke, *Winning Hearts and Votes: Social Services and the Islamist Political Advantage*, (Ithaca, NY: Cornell University Press, 2019), pgs. 72-76.

2

# EXHIBIT C

# MARIE VANNETZEL LETTER

**In the matter of**
**Mr. Ayman Soliman's Termination of Asylum Status**

**Witness Statement**

1. My name is Marie Vannetzel, born on 26/10/1983, French nationality. I am a tenured researcher in social sciences at the National Center for Scientific Research (CNRS) in France, affiliated with the Institute for Studies and Research on Arab and Muslim Worlds (IREMAM), located at 5 rue du Château de l'Horloge CS 90412 13097 Aix-en-Provence Cedex 2 (phone number: +33664330852).

2. The facts in this statement come from my personal knowledge as a recognized academic working on Egyptian society and politics since 2005, author of several books and numerous peer-review articles on Egypt. One of my articles is cited in the Notice of Termination of Asylum Status, signed by the Director of the Asylum Office in Chicago and addressed to Mr Soliman on June 5, 2025. This article is entitled "The Muslim Brotherhood's 'Virtuous society' and State Developmentalism in Egypt: the Politics of 'Goodness'", and has been published in the journal *International Development Policy*, issue 8, 2017, online open access: https://doi.org/10.4000/poldev.2327.

3. The Notice quotes the following sentences from this article as evidence of a) the interlink of the Muslim Brotherhood and the charity association al-Jameya al-Shareya b) the argument that this charity provided support to the Muslim Brotherhood c) the idea that Mr Soliman, as a board member of this charity, provided material support to the Muslim Brotherhood:

   > "The MBs were allowed to deeply integrate into the regional and local offices of the association, until 1990. In that year, their victory in the elections to the central board led to a change in the attitude of the regime towards this situation, and the board was suddenly dissolved. However, many MB activists remained active in the numerous local branches, and were often among the founders. (...) One of the most famous programmes run by the GS, which accounts for much of its popularity, was established under the leadership of the Muslim Brothers."

4. I strongly disagree with the way these sentences are quoted and interpreted. I consider this a dishonest manipulation of my text and my work. First of all, it is important to reinsert the preceding sentence, as well as the sentence immediately following the first part of this quote, before the break indicated by (...). Indeed, the complete paragraph conveys an entirely different meaning:

   > **"Al-Gam'iyya al-Shar'iyya is one of the oldest and biggest Islamic charitable associations and active throughout Egypt. Sarah Ben Néfissa shows how, under Sadat's regime, this association had become a para-public organisation and how the regime instrumentalised it in order to implement 'the new social policy [of] charity "on behalf" of Islam'** (Ben Néfissa, 2003, 222, authors' transl.). The MBs were allowed to deeply integrate into the regional and local offices of the association, until 1990. In that year, their victory in the elections to the central board led to a change in the attitude of the regime towards this situation, and the board was suddenly dissolved. However, many MB activists remained active in the numerous local branches, and were often among the founders. **But far from being reserved exclusively for the MB, the GS was also a place**

Uploaded on: 07/20/2025 at 03:06:57 PM (Eastern Daylight Time) Base City: CLE

**for local figures, including those close to the NDP, who sought to prove their spirit of service. It was, then, a place for interactions that cut across political identities."**

I demonstrate in this paragraph, and in the article as a whole, that this association is one of the most established charity in Egypt and that it has historically had very close links with the Egyptian state, to the extent that although it is funded by private donations and Islamic alms (*zakat, sadaqa* etc.) it stands as a para-public service providing healthcare and education to the Egyptian population. Because the vast majority of Egyptians have no social insurance, it is important to underline the Islamic tradition of charity and benevolent practice in Egypt. During the period of understanding between President Sadat's regime and the Muslim Brotherhood movement in the 1970s - an understanding based on the movement's official and effective rejection of violence and its adoption of the legalistic path - members of this movement were authorized to sit on the association's boards and to work in its activities. In the 1990s, for strategic political reasons aimed at curbing the popularity of the movement, which was scoring well in elections, President Mubarak changed this policy and excluded all Muslim Brotherhood members from the association's boards. State Security services (the political police) took great care to ensure that no member of the movement held a position in the association. I was able to observe this close surveillance during my fieldwork in the years 2000-2010.

My article in no way asserts that the Jameya Shareya was an association belonging to the Muslim Brotherhood, nor that it supported this movement. I strictly state that among the volunteers at local level there were people more or less close to this movement, but just as much as there were members of Mubarak's party (the NDP) – and even more numerous were the members of the association who had no political orientation at all.

I therefore contest statement a) presupposing the interlink between the MB as an organization and the Jameya Shareya as an association.

5. The Jameya al-Shareya was first and foremost a charitable space where people belonging to their local community worked to help the poor (in a country where 30% of the population live below poverty line), while keeping politics at bay. On this point I testify to the fact that during my fieldwork, I observed several of the association's medical convoys. I interviewed many of the doctors there, and the result of my investigation was that the majority of them had no connection whatsoever to the Muslim Brotherhood. The objective that brought together the members of a local community around the Jameya Shareya was to treat people living in great distress and suffering from serious chronic illnesses such as hepatitis C, which afflicted many Egyptians.

I want to clarify that the "famous programme run by the Jameya al-Shareya" to which I refer in the quote is the "orphan project": It consists in helping donors in the local community to sponsor one or more orphans in their neighbourhood, by paying a monthly sum to the association, which passes it on to the mother or guardian of the child, who must know nothing of the sponsorship. This stems from the Muslim tradition of charity, which preserves the anonymity of the donor so as not to create a debt owed

4

by the recipient. This programme was launched in the 1970s when there were Muslim Brothers on the boards, but it continued long after they were expelled and even today, when the movement has been completely decimated in Egypt and is no longer active there.

This is why I firmly reject the idea b) that the association was supporting the Muslim Brotherhood organization. It provides support to the poor population, and while it is possible that some of the volunteers were, at the time, sympathizers of the Muslim Brotherhood, which was the main parliamentary opposition force, it is clear that through their charitable work they were providing support only to poor beneficiaries, and in no way providing material support to the Muslim Brotherhood organization.

6. Consequently, I strictly reject the idea (c) that Mr Soliman, simply by virtue of his activity in the association, could be accused of providing material support to the Muslim Brotherhood organization. I would also like to stress the inconsistency of the Asylum Officer's reasoning based on my article. Indeed, as the quote clearly indicates, if Mr Soliman was a board member of the Jameya Shareya, then he could not be linked in any way to the Muslim Brotherhood, since State Security prevented any Muslim Brotherhood participation in these boards.

7. On another note, I want to clarify one final point. It is incorrect to describe the Muslim Brotherhood as a terrorist organization at the time Mr Soliman was living in Egypt and was a member of the Jameya Shareya. Since the refoundation of the movement in the 1970s, no acts of violence have been committed by the Muslim Brotherhood. In the 2000s, the Muslim Brotherhood had 20% of the seats in Parliament and peacefully mobilized its supporters in elections and in the rare demonstrations tolerated by the regime (for example, the 2005 demonstrations claiming for electoral supervision).

During the 2011 Revolution, the movement participated in the political transition, always seeking to give priority to the electoral route (over that of demonstrations). The movement founded a legal political party which won the legislative elections and then the presidential elections, in the person of President Morsi. As in any revolutionary period, the political scene was very divided, and President Morsi faced a great deal of opposition. It would take too long to explain the context that led to the clashes on 5 December 2012, outside the Ittihadiyya presidential palace in Cairo. The clashes were violent, but they were clashes between pro-Morsi supporters and political opponents who were holding a sit-in in front of the palace. Under no circumstances can this event be described as a terrorist attack. Moreover, no court or institution in Egypt has qualified it as such. During the clashes, 8 of the thirteen people killed that day were members of the Brotherhood, according to the authoritative Wikithawra database. These were therefore tragic but banal skirmishes in a context of regime change. The Muslim Brotherhood was only declared a terrorist organization on 25 December 2013 by the Egyptian government. There is no valid reason why the US Asylum Office should be allowed to use the date of 5 December 2012 as the start of the designation of the Muslim Brotherhood as a terrorist organization, precisely at a time when the President was a Muslim Brother. The US administration did not start work on this designation until 2019.

8. I would like to conclude by emphasizing that the authoritarian military regime led by President Sissi has ferociously eradicated the Muslim Brotherhood in Egypt, following Morsi's overthrow in July 2013. Thousands of supporters have been jailed. The regime also uses the accusation of belonging to the Muslim Brotherhood to criminalize anyone it wishes to imprison. Numerous companies and associations suspected of links with the Muslim Brotherhood have been seized and placed under the regime's supervision. In such a context, the mere fact that Jameya Shareya has not been subject to such repression and has not been seized is a clear and indisputable indication that it has no organic nor indirect link with the Muslim Brotherhood. This is further evidence rejecting arguments a, b, c made by the Asylum Officer.

The facts in this witness statement are true to the best of my knowledge and belief.

Date: July 20, 2025, Aix-en-Provence, France.

Signed : Marie Vannetzel

# EXHIBIT D

# ORIGINAL NOTICE TO APPEAR

Department of Homeland Security
**Notice to Appear**

---

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: A207336160

In the Matter of:

Respondent: _____ AYMAN FAREH SOLIMAN _____ currently residing at:

3515 W FORK RD, APT 30, CINCINNATI, OH 45211
(Number, street, city and ZIP code)                      (Area code and phone number)

[   ] 1. You are an arriving alien.
[   ] 2. You are an alien present in the United States who has not been admitted or paroled.
[ v ] 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States.
2. You are a native of EGYPT and a citizen of EGYPT.
3. You were admitted to the United States at TUCSON, AZ on or about 06 MARCH 2014 as a nonimmigrant B-2 VISTOR FOR PLEASURE with authorization to remain in the United States until 01 SPETEMBER 2014;
4. On 02 FEBRUARY 2015, you filed an I-589 Application for Asylum with the U.S. Citizenship and Immigration Services (USCIS) Asylum Office.
5. On 07 JUNE 2018, your I-589 Application for Asylum was granted by the Chicago Asylum Office;
6. On 03 JUNE 2025, your asylum status was terminated because there is evidence that indicated that you provided material support to a Tier III terrorist organization, such that you are not eligible for asylum;
7. You remained in the United States thereafter without further authorization.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(1)(A) of the Immigration and Nationality Act (Act), as amended, in that you are an alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time, to wit:
Section 212(a)(3)(b)(i) of the Immigration and Nationality Act, in that you are an alien who has engaged in terrorist activity as described in 212(a)(3)(B)(iv)(VI)(dd) and 212(a)(3)(B)(iv)(VI) for having provided material support for the commission of terrorist activity, an individual that commits terrorist activity, or to a terrorist organization.

[   ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
[   ] Section 235(b)(1) order was vacated pursuant to: [   ] 8CFR 208.30   [   ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

801 W. SUPERIOR AVE, STE13-100 CLEVELAND, OH 441131829
(Complete Address of Immigration Court, including Room Number, if any)

on 07/03/2025    at 02:30pm    to show why you should not be removed from the United States based on the
    (Date)        (Time)

charge(s) set forth above.

                           Supervisory Asylum Officer
                     (Signature and Title of Issuing Officer)

Date: 06/03/2025         Chicago IL
                                        (City and State)

EOIR - 1 of 3

Exh. 1 -

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is ARABIC.

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
*(Signature of Respondent)*

Date: _____

_____
*(Signature and Title of Immigration Officer)*

### Certificate of Service

This Notice To Appear was served on the respondent by me on <u>06/05/2025</u>, in the following manner and in compliance with section 239(a)(1) of the Act.

[  ] In person     [  ] by certified mail, returned receipt # _____ requested     [ v ] by regular mail
[  ] Attached is a credible fear worksheet.
[ v ] Attached is a list of organization and attorneys which provide free legal services.
The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

*A. Hunt, LAS*

_____
*(Signature of Respondent if Personally Served)*

_____
*(Signature and Title of Officer)*

DHS Form I-862 (6/22)                                                                                                  Page 2 of 3

EOIR-1 2 of 3

Exh. 1 -

**Privacy Act Statement**

**Authority:**

The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**

You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**

For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at **https://www.dhs.gov/system-records-notices-sorns**. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at **https://www.justice.gov/opcl/doj-systems-records**. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**

Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

# EXHIBIT E

# FORM I-261

# (AMENDMENTS TO NOTICE TO APPEAR)

**U.S. Department of Homeland Security**
Immigration & Customs Enforcement

# Additional Charges of Inadmissibility/Deportability

In:  ☑ **Removal proceedings under section 240 of the Immigration and Nationality Act**
☐ **Deportation proceedings commenced prior to April 1, 1997 under former section 242 of the Immigration and Nationality Act**

**In the Matter of:**

Alien: Soliman, Ayman
File No: A 207 336 160                Address:        c/o Counsel of record – ICE Custody

☐In addition to ☑In lieu of the charge(s) already pending, there is hereby lodged against you additional charge(s) that you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:

Section 237(a)(1)(B) of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted, in violation of this Act or any other law of the United States.

Section 237(a)(1)(B) of the Immigration and Nationality Act (Act) as amended, in that you are present in the United States in violation of law

In support of the additional charge(s) there is submitted the following factual allegation(s) ☐ in addition to ☑ in lieu of those set forth in the original charging document:

1. You are not a citizen or national of the United States.
2. You are a native of Egypt and a citizen of Egypt;
3. You were admitted to the United States on or about March 6, 2014 as a nonimmigrant B-1/B-2 Visitor with authorization to remain in the United States until September 1, 2014;
4. Your status was changed to that of an R-1 Nonimmigrant, with authorization to remain in the United States from September 2, 2014 to March 1, 2017;
5. On February 2, 2015, you filed an I-589 Application for Asylum with the U.S. Citizenship and Immigration Services (USCIS) Asylum Office;
6. On June 7, 2018, your I-589 Application for Asylum was granted by the Chicago Asylum Office;
7. On June 3, 2025, your asylum status was terminated by the Chicago Asylum Office;
8. You remained in the United States beyond the termination of your asylum status without authorization from the Department of Homeland Security.
9. You are present in the United States in violation of the law, as you have not been provided authorization from the Department of Homeland Security to remain in the United States.

Dated:  July 22, 2025

**CHERYL C GUTRIDGE**
Digitally signed by CHERYL C GUTRIDGE
Date: 2025.07.22 10:57:28 -04'00'

Cheryl C. Gutridge
Senior Attorney

EOIR – 1 of 2

Form I-261(Rev. 4/1/9                                                                    \

## Notice to Respondent

**Warning:  Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings.  You are required to carry it with you at all times.

**Representation:**  If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review.  Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case.  If any document is in a foreign language, you must bring the original and a certified English translation of the document.  If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the charging document and that you are inadmissible or deportable on the charges contained in the charging document.  You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the ICE, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding.  You will be provided with a copy of this form.  Notices of hearing will be mailed to this address.  If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing.  If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the ICE.

| Certificate of Service |
|---|
| This charging document was served on the respondent by me on <u>July 22, 2025</u>, in the following manner and in<br>(Date)<br>compliance with section 239(a)(1)(F) of the Act: |
| ☐ in person          ☐ by certified mail, return receipt requested          ☐          by regular mail  ☒ via ECAS delivery |
| to: <u>Counsel of Record, Robert Ratliff, who is a registered ECAS user</u><br>(Alien's address) |
| ☐ The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.  CHERYL C GUTRIDGE   Digitally signed by CHERYL C GUTRIDGE  Date: 2025.07.22 10:58:24 -04'00' |
| _____ (Signature of respondent if personally served)          Cheryl C. Gutridge, Senior Attorney |

Form I-261(Rev. 4/1/97)N

# EXHIBIT F

# EGYPTIAN COURT RULING ARTICLE

# Administrative Court lifts Al-Gameya Al-Shareya

DN

**dailynewsegypt.com**/2014/06/25/administrative-court-lifts-al-gameya-al-shareya

Aaron T. Rose                                                                                    June 25, 2014



On Tuesday the Administrative Court ruled against the ban on the Islamic-based charity organisation Al-Gameya Al-Shareya, which had its assets frozen on 25 December for its supposed ties to the banned-Muslim Brotherhood.

Mohamed Ibrahim, defence council to Al-Gameya Al-Shareya, told state-run Al-Ahram that the court judgement is final, and has ruled that the NGO has no ties to the Muslim Brotherhood.

Al-Gameya Al-Shareya is a charity providing service to the poor, regardless of religion, and runs medical centres specialising in oncology, radiology, burn victims, optometry and dialysis, said Ibrahim.

The NGO has over 1,090 newborn incubators in 18 governorates, 30 medical centre projects that serve over 450,000 orphans and 250,000 women, according to a statement released Al-Gameya Al-Shareya in December.

Al-Gameya Al-Shareya was one of 1,055 charities and NGOs who were banned after the 23 September court decision to dismantle the Muslim Brotherhood. On 25 December the Muslim Brotherhood was officially designated a terrorist group by the Egyptian authorities, coming a day after a deadly bomb hit the security directorate in Mansoura.

Sinai-based terrorist group Ansar Beit Al-Maqdis took responsibility for the Mansoura bombing.